NUMBER 13-04-608-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ALBERTO CANTU, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 




On appeal from the County Court at Law No. 2 


of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 


 On February 1, 2007, this Court issued a memorandum opinion in this case. On
March 6, 2007, appellant, Alberto Cantu, filed a petition for discretionary review. (1) Pursuant
to rule 50 of the Texas Rules of Appellate Procedure, we have reconsidered our original
opinion. (2) We withdraw our memorandum opinion of February 1, 2007, and substitute the
following as the corrected opinion of the Court. (3)

 Alberto Cantu appeals the judgment convicting him of driving while intoxicated. 
Cantu argues he was denied his right to a speedy trial under the Sixth Amendment to the
Constitution of the United States and article 1, section 10 of the Texas Constitution. We
agree and therefore reverse the trial court's judgment and render a judgment dismissing
the prosecution with prejudice.

I. Background

 On March 5, 2003, Cantu was arrested for driving while intoxicated (DWI), second
offense. (4) Cantu posted bond the next day. On July 6, 2004, Cantu was formally charged
by complaint and information with the DWI offense. Cantu then asserted his speedy trial
complaint in a motion to dismiss on August 17, 2004. On August 26, 2004, a hearing was
held on the motion. The motion was denied and on October 25, 2004, upon Cantu
entering a plea of guilty, the trial court suspended his sentence and placed him on
community supervision for twelve months. 

II. Standard of Review and Applicable Law 

 In reviewing a trial court's ruling on a defendant's speedy trial claim, we apply a
bifurcated standard of review: an abuse of discretion standard for the factual components
and a de novo standard for the legal components. (5) This means we independently weigh
and balance the factors outlined in Barker v. Wingo, (6) but we presume the trial court
resolved any disputed fact issues in a manner that supports its ruling. (7) Stated differently,
we review legal issues de novo but give deference to a trial court's resolution of factual
issues, including deference to the trial court's drawing of reasonable inferences from the
facts. (8)

 The right to a speedy trial is guaranteed by the United States and Texas
constitutions. (9) The test under both the federal and state constitutions is the same. (10) In
reviewing a trial court's decision to grant or deny a speedy trial claim, we must balance four
factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion
of his/her right, and (4) any resulting prejudice to the defendant. (11) No single factor is
necessary or sufficient to establish a violation of the right to a speedy trial. (12) Thus, we
must "engage in a difficult and sensitive balancing process" in each individual case. (13) 

III. Analysis


A. Length of Delay


 The length of the delay is undisputed. Cantu was arrested on March 5, 2003, was
formally charged by complaint and information on July 6, 2004, and had his first trial setting
on August 30, 2004. Cantu and the State agree that there was a seventeen-month interval
between Cantu's arrest and his first trial setting. (14) This seventeen-month "interval between
accusation and trial" is "presumptively prejudicial" and therefore sufficient to trigger a
speedy trial analysis under Barker. (15) Indeed, Texas courts have generally held that a delay
of eight months or longer is "presumptively unreasonable" and thus triggers a speedy trial
analysis. (16) Therefore, we must "consider, as one factor among several, the extent to which
the delay stretches beyond the bare minimum needed to trigger judicial examination of the
claim." (17)

 If we take eight months as the "bare minimum needed to trigger judicial examination
of the claim," it is exceeded here by nine months--a substantial period of time given that
this is a "simple DWI case." (18) We therefore hold this first factor weighs in favor of finding
a violation of Cantu's right to a speedy trial.

 B. The Reason for the Delay


 Once a delay has been found to be presumptively prejudicial, the State bears the
burden of justifying the delay. (19) In examining the reasons for the delay, different weights
should be assigned to different reasons. (20) A deliberate attempt to delay the trial in order
to hamper the defense should be weighed heavily against the State. (21) However, valid
reasons are not weighed against the State at all. (22) When the record is silent as to the
reason for the delay, we may presume neither a valid reason nor a deliberate attempt to
prejudice the defendant. (23) Therefore, when the record is silent, the second Barker factor
weighs against the State, but not heavily. (24)

 On March 19, 2003, two weeks after Cantu was arrested, the Harlingen Police
Department ("the Department") sent his case file to the Cameron County District Attorney's
Office ("DA's office"). On April 10, 2003, the file was returned to the Department because
the DA's office wanted a more detailed police report and additional witness statements. 
Testimony at trial revealed that at some point the file was lost, and it is unclear whether the
original file was ever found. On April 16, 2004, Cantu's case was resubmitted to the DA's
office. Cantu was then indicted on July 6, 2004.

 Both parties agree that the trial delay was unintentional and that Cantu was not
responsible for the delay. Disagreement does exist, however, on the issue of whether
there is good cause for one year to elapse between the date that the DA's office returned
Cantu's file to the Department (April 10, 2003) and the date the Department resubmitted
the file (April 16, 2004). The State's evidence revealed that during this period of time, a
revised police report was made on February 21, 2004, and an additional witness statement
was taken on March 3, 2004. Furthermore, the police officer who revised the report,
Salvador Carmona, Jr., testified that Cantu's file was lost, in part, as a result of an
overburdened system. At the close of the hearing on Cantu's motion to dismiss, the trial
judge stated that she believed this second Barker factor--reason for the delay--favored
Cantu. We concur with the trial judge in this regard.

 Adding additional details to a police report and conducting one additional witness
interview for Cantu's file should not take a year to accomplish. Though Carmona testified
that he believed the delay was excusable because the Department was overburdened,
another witness for the State testified that the delay simply resulted from the Department
losing Cantu's file. Martha Gracia, who was employed with the Department and in charge
of receiving cases from investigators and submitting them to the DA's office, testified that
Cantu's file had been lost. Gracia further testified that she had been told that cases at the
Department were to be submitted to the DA's office in a timely manner, which generally
meant within ten to forty days.

 Whether the delay resulted from the Department's negligence or an overburdened
system, these reasons should be weighted against the State "since the ultimate
responsibility for such circumstances must rest with the government rather than with the
defendant." (25) For this reason, we find that this second factor weighs against the State, but
not heavily. (26)

C. Assertion of the Right
 

 Cantu was charged on July 6, 2004, and he first asserted his speedy trial complaint
in a motion to dismiss less than two months later, on August 17, 2004. The State notes
that Cantu's speedy trial claim was framed as a motion to dismiss, which "potentially
weakens [his] case, as 'a [request for a] dismissal instead of a [request for a] speedy trial
weakens [a speedy trial] claim because it shows a desire to have no trial instead of a
speedy trial.'" (27) We note, however, that "'each case must turn on its own facts, and the
particular relief a defendant seeks is but one fact to consider.'" (28) Given the particular facts
of this case, we find it understandable that Cantu first framed his speedy trial complaint in
a motion seeking dismissal. (29) Because of the State's delay in charging him, he could not
have made a speedy trial complaint in any form for sixteen months after he was arrested;
a court that had jurisdiction to entertain a speedy trial complaint simply did not exist. 
Because Cantu asserted his speedy trial rights promptly after the State filed a charge, this
third factor also weighs in Cantu's favor. (30)

D. Prejudice Caused by the Delay


 The final Barker factor takes into account any prejudice suffered by the defendant
as a result of the delay. (31) The prejudice to the defendant is assessed in light of the
interests which the speedy trial right is designed to protect. (32) Those interests are (1)
preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the
accused, and (3) limiting the possibility that the defense will be impaired. (33) Cantu provided
testimony that touched upon interests two and three. With regard to the third interest,
Cantu testified that the trial delay impaired his defense by limiting his ability to find
witnesses that could testify on his behalf. The trial judge expressed skepticism towards
this testimony, as do we. (34) Though we find that the first and third interests are not strongly
implicated, we cannot say the same about the second interest.

 Cantu testified that he hired an attorney within a few days after his arrest in the hope
of quickly resolving his pending DWI charge. He testified that since his arrest, he has felt
anxiety as a result of his pending charge and that the trial delay exacerbated this
problem. (35) The State did not challenge this testimony during Cantu's cross-examination,
nor at any other time. As a result, Cantu's testimony "is at least some evidence of the type
of 'anxiety' that the Supreme Court considers under the prejudice prong of Barker." (36) 
Cantu also testified that since his arrest, he has had to report to a bondsman every
Monday, which supports an inference of actual prejudice. (37) In light of this testimony, we
find that the fourth factor favors Cantu.

IV. Conclusion


 All four of the Barker factors weigh in Cantu's favor. Accordingly, we hold the trial
court erred in denying Cantu's motion to dismiss and render judgment dismissing the
prosecution with prejudice. (38)



 

 LINDA REYNA YAÑEZ,

 Justice




Do not publish. Tex. R. App. P. 47.2(b)


Memorandum opinion delivered and filed 

this the 29th day of March, 2007.

1. There was no motion for rehearing; accordingly, Cantu had to file his petition within 30 days after
the day this Court's judgment was rendered. See Tex. R. App. P. 68.2(a). Because the 30th day fell on a
Saturday, Cantu had to file by March 5, 2007. Cantu timely mailed his petition to this Court and it was filed
on March 6. Because the mailed petition was received within ten days after the filing deadline, it was
considered timely filed. See Tex. R. App. P. 9.2(b).
2. See Tex. R. App. P. 50.
3. See id.
4. See Tex. Pen. Code Ann. §§ 49.04(a), 49.09(a) (Vernon 2003).
5. Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).
6. Barker v. Wingo, 407 U.S. 514, 530 (1972).
7. See id.; State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).
8. Kelly v. State, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005).
9. See U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 10; Zamorano, 84 S.W.3d at 647.
10. Floyd v. State, 959 S.W.2d 706, 709 (Tex. App.-Fort Worth 1998, no pet.) (citing Hull v. State, 699
S.W.2d 220, 221 (Tex. Crim. App. 1985)).
11. Zamorano, 84 S.W.3d at 648 (citing Barker, 407 U.S. at 530).
12. Id. (citing Barker, 407 U.S. at 533).
13. Id.
14. The length of the delay may be measured starting from the time of the arrest and not solely from
the time of the indictment. See United States v. Marion, 404 U.S. 307, 320 (1971). In Marion, the Court
stated the following:


 Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is
free on bail or not, and that may disrupt his employment, drain his financial resources, curtail
his associations, subject him to public obloquy, and create anxiety in him, his family and his
friends. . . . So viewed, it is readily understandable that it is either a formal indictment or
information or else the actual restraints imposed by arrest and holding to answer a criminal
charge that engage the particular protections of the speedy trial provision of the Sixth
Amendment.


Id. at 320 (emphasis added); see Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).
15. See Doggett v. United States, 505 U.S. 647, 651, 652 n.1 (1992) (noting that courts "have generally
found postaccusation delay 'presumptively prejudicial' at least as it approaches one year").
16. See Zamorano, 84 S.W.3d at 649 n.26 (citing Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim.
App. 1992)).
17. Doggett, 505 U.S. at 652.
18. Zamorano, 84 S.W.3d at 651 n.42.
19. Emery v. State, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994).
20. Id.
21. Id.
22. Id.
23. Dragoo, 96 S.W.3d at 314.
24. Id.
25. Barker, 407 U.S. at 531.
26. Munoz, 991 S.W.2d 818, 822.
27. Zamorano, 84 S.W.3d at 651 n.40 (quoting Parkerson v. State, 942 S.W.2d 789, 791 (Tex.
App.-Fort Worth 1997, no pet.)). The record of Cantu's hearing reveals that the trial judge agreed with the
reasoning espoused by the State. The trial judge expressed skepticism as to whether the third Barker factor
favored Cantu, stating that she thought Cantu's "evidence is a little weak."
28. Id. (quoting Phillips v. State, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983)).
29. See Cathey v. State, No. 04-04-00501-CR, 2005 Tex. App. LEXIS 10133, at *8 (Tex. App.-San
Antonio Dec. 7, 2005, no. pet.) (not designated for publication).
30. Id.
31. See Dragoo, 96 S.W.3d at 316.
32. Id.
33. Id.
34. On the day of his arrest, Cantu was involved in an automobile accident; police were drawn to the
scene of the accident and this ultimately led to Cantu's arrest. At his hearing, Cantu asserted that he was not
responsible for the accident and that he had wanted to place an ad in the newspaper in the hope of being
contacted by individuals who may have witnessed the accident and would be willing to testify on his behalf. 
Cantu gave no adequate reason for why he was precluded from placing the ad until after he was formally
charged.
35. Cantu testified that he had "plenty" of anxiety and was nervous. Cantu also felt "pressure" from
having to report weekly to a bondsman.
36. Zamorano, 84 S.W.3d at 654 ("It is true that the only evidence appellant offered to demonstrate his
anxiety was his own testimony. However, because the State did not challenge appellant's testimony, it is at
least some evidence of the type of 'anxiety' that the Supreme Court considers under the prejudice prong of
Barker."). The Zamorano majority further stated that even if the source of a defendant's anxiety stems from
the defendant's fear of conviction, "the sword of Damocles weighs no less merely because the source of
anxiety is appellant's fear of conviction and the resultant as-yet-unknown punishment." Id.; but cf. Shaw v.
State, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (disregarding defendant's evidence of anxiety because
it did not demonstrate "any anxiety or concern beyond the level normally associated with being charged with
a felony sexual crime").
37. Id. ("[T]he length of the delay itself supports an inference of actual prejudice, as does appellant's
testimony of the direct economic costs, the four years' worth of disruptions to his job, and the weekly
requirement to report to the bonding company.") (emphasis added).
38. See Barker, 407 U.S. at 522.